UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER GASKIN | No. 3:22-cr-98 (SRU) |

### ORDER ON MOTION TO DISMISS COUNT 1 OF INDICTMENT

Christopher Gaskin ("Gaskin") filed a motion to dismiss count one of the indictment charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doc. No. 112. Gaskin argues that Section 922(g)(1) is unconstitutional as applied to him because it amounts to a violation of his Second Amendment Rights. For the reasons set forth below, Gaskin's motion to dismiss is **denied**.

I.  **Background**

On May 18, 2022, a federal grand jury returned a two-count indictment of Christopher Gaskin. Doc. No. 18. The first count of that indictment charged him with Unlawful Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). *Id.* Jury selection is set for February 2, 2024, with evidence to commence on February 26, 2024. Docs. No. 114-15. On January 23, 2024 Gaskin filed the instant motion to dismiss count One of the indictment. Doc. No. 112.

II. **Standard of Review**

Gaskin filed the instant motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(1), which permits a defendant to file pretrial motions raising "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "In ruling on a motion to

dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *United States v. Litvak*, No. 3:13-CR-19-JCH, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013).

### III.     Discussion

As an initial matter, I observe that Gaskin states he is asserting an "as-applied" challenge to Section 922(g)(1) on the grounds that it violates his Second Amendment rights. *See* Mot. to Dismiss, Doc. No. 112, at 3 ("To be clear, this is an 'as-applied' challenge."). An as-applied challenge to a statute's constitutionality "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). A facial challenge, in contrast, requires proof that "no set of circumstances exists under which [the challenged statute] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal citations omitted).

However, despite Gaskin's initial statement that his challenge to Section 922(g)(1) is "as-applied," the arguments that he makes in his motion clearly challenge the facial constitutionality of the statute as well. *See, e.g.,* Doc. No. 112, at 10-11 ("The Government needs to show how 18 U.S.C. § 922(g)(1) is consistent with how the Nation has regulated firearms. . . . To criminalize the conduct at issue in this case, and with the applicability of [Section] 922(g)(1) overall, it must stand on a strong Constitutional foundation."). In its opposition, the government also interprets Gaskin's motion as mounting a facial challenge to Section 922(g)(1). Mem. in Opp'n, Doc. No. 116, at 1 ("Gaskin has moved to dismiss count One, raising an as applied and facial constitutional challenge to § 922(g)(1)."). Additionally, "[t]he Second Circuit has yet to address

whether an as-applied challenge is available under the Second Amendment, and other circuit courts of appeal have concluded that one is not." *United States v. Zan Hairston*, No. 3:23-CR-00020-SVN, 2024 WL 326667, at *3 (D. Conn. Jan. 29, 2024) (citing *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), and *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023)). *See also United States v. Gonzalez,* No. 1:23-CR-18-MKV, 2024 WL 96517, at *5 (S.D.N.Y. Jan. 9, 2024) (citing the same cases from the Eighth and Tenth Circuits and explaining that, "[o]ther circuits [] have found Section 922(g)(1) constitutional in all of its applications, foreclosing as-applied challenges."). For these reasons, I construe Gaskin's motion as raising both a facial and an as-applied challenge to Section 922(g)(1).

    A.  <u>Facial Challenge</u>

Gaskin argues that, since the Supreme Court's 2022 decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, in order for this Court to hold that Section 922(g)(1) is constitutional, "[t]he Government must establish a bon[a] fide 'tradition' of firearm regulation that shows that the Founders intended to alienate felons from their Second Amendment right," a burden that it cannot meet. Doc. No. 112, at 11. I disagree that, consistent with applicable Second Circuit precedent, *Bruen* requires the government to meet the burden of proving historical tradition in the context of a challenge to Section 922(g)(1).

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "For the better part of this nation's history, it was understood that this amendment did not meaningfully restrict lawmakers' ability to regulate the civilian use or possession of weapons." *United States v. Harrison*, No. 3:22-CR-455, 2023 WL 4670957 (N.D.N.Y. July 20, 2023). The scope of the right conferred by the Second Amendment was

interpreted to require "some reasonable relationship to the preservation or efficiency of a well regulated militia." *United States v. Miller*, 307 U.S. 174, 1708 (1939). Then, in 2008, the Supreme Court held for the first time in *District of Columbia v. Heller* that the Second Amendment actually guarantees an individual right to bear arms for self-defense, and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). *See also McDonald v. City of Chicago,* 561 U.S. 742 (2010) (incorporating the individual right to bear arms, recognized in *Heller*, against the states). The Court in both *Heller* and *McDonald* insisted, though, that the "right secured by the Second Amendment is not unlimited," and its holdings "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," among other categories of presumptively constitutional prohibitions. *Heller*, 554 U.S. at 626. *See also McDonald*, 561 U.S. at 786 ("We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.").

Then, in *Bruen*, the Supreme Court considered the constitutionality of a New York law requiring individuals to prove a special need for self-protection in order to obtain a license to carry a concealed firearm outside of their home. The Court took the opportunity to reject the "two-step" test for analyzing Second Amendment challenges that lower courts had "coalesced around" in the years since *Heller*, describing that test as combining "history with means-ends scrutiny." 597 U.S. 1, 17 (2022). In place of that test, the Court emphasized that the proper test must be "rooted in the Second Amendment's text, as informed by history," holding:

> In keeping with *Heller* . . . when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm

4

regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.*

Gaskin argues that "[t]he constitutional scrutiny required of courts changed under *Bruen*," and so "[c]ourts cannot simply rely on *Heller*'s commentary and dicta" about the validity of felon-in-possession laws to support the ongoing constitutionality of Section 922(g)(1). Doc. No. 112, at 4. But that is a misunderstanding of the effect of *Bruen* on prior Second Amendment precedent. The majority opinion in *Bruen* was careful to emphasize, at numerous points, that it was *reaffirming* and clarifying *Heller* and *McDonald*, not abrogating the Court's reasoning in those cases. *See, e.g.*, *Bruen*, 597 U.S. at 8 ("We too agree, and now hold, **consistent with *Heller* and *McDonald***, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."), 26 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.") (emphasis added). And, the majority in *Bruen* also qualifies its holding by stating that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain **reasonable, well-defined restrictions**," and by repeatedly emphasizing that the right is held by "**law-abiding**, responsible citizens." *Id.* at 26, 70 (emphasis added). Moreover, six Justices authored or joined separate opinions in *Bruen* that explicitly note that *Bruen* does not disrupt *Heller* and *McDonald's* endorsement of laws banning felons from possessing firearms. *See id.* at 71 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); 80-81 (Kavanaugh, J., joined by Roberts, J., concurring) (quoting the passage from *Heller* explicitly endorsing felon-in-possession laws, and stating that, "[p]roperly

5

interpreted, the Second Amendment allows a 'variety' of gun regulations."); 129 (Breyer, J., joined by Sotomayor and Kagan, J.J., dissenting) (referring to the same passage in *Heller* and stating "I understand the Court's opinion today to cast no doubt on that aspect of *Heller's* holding.").

Moreover, Gaskin's characterization of the passage in *Heller* that emphasizes the constitutionality of "longstanding prohibitions on the possession of firearms by felons" as mere "commentary and dicta" is of little consequence. *See* Doc. No. 112, at 4. Following *Heller* and *McDonald*, the Second Circuit relied on those cases to definitively hold in a *per curiam* opinion in the case *United States v. Bogle*, that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." 717 F.3d 281, 281-82 (2d Cir. 2013). And, as the government correctly points out, "*Bogle* is wholly consistent with the *Bruen* framework and thus remains good law," doc. no. 116, at 6, because it does not employ any means-ends interest balancing that the Court in *Bruen* clarified was improper. *See Bruen*, 597 U.S. at 19 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context."). Instead, *Bogle* is a succinct opinion that relies wholly on the language of *Heller* and *McDonald*, cases that *Bruen* endorsed. *Bogle*, 717 F.3d at 281 ("[I]n both of these opinions [*Heller* and *McDonald*], the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'").

This Court remains bound under *Bogle* to hold that Section 922(g)(1) is constitutional, and it is therefore unnecessary to engage in the historical analysis that *Bruen* commands in order to ascertain whether felon-in-possession laws unconstitutionally restrict individuals' right to bear

arms.[1] Numerous decisions by other district courts within the Second Circuit confirm that *Bogle* remains binding precedent, and similarly end their analysis of Section 922(g)(1)'s constitutionality with that conclusion. *See, e.g., United States v. Sternquist,* 2023 WL 6066076, at *5 (E.D.N.Y. Sept. 15, 2023) (collecting cases). *See also United States v. Hairston*, No. 3:23-CR-00020-SVN, 2024 WL 326667, at *4 (D. Conn. Jan. 29, 2024) ("Every district court within the Second Circuit to consider the issue has held that § 922(g)(1) remains constitutional under *Bogle*.") (collecting cases); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (analyzing whether its own in-circuit pre-*Bruen* decision holding Section 922(g)(1) constitutional, *United States v. McCane*, remained good law after *Bruen*, and concluding that "[g]iven the six Justices' reaffirmation of the *Heller* language . . . we conclude that *Bruen* did not indisputably and pellucidly abrogate our precedential opinion in *McCane*.").

Notably, the conclusion I reach today—that Section 922(g)(1) remains constitutional after *Bruen*—is consistent with the conclusion reached by the vast majority of courts across the country that have been presented with post-*Bruen* constitutional challenges like this one. *See* Doc. No. 116, at n.9 (collecting cases). Additionally, despite Gaskin's assertion that a "[c]ircuit split[] exist[s] in this issue," doc. no. 112, at 1, this Court is only aware of three circuit courts that have authored opinions squarely addressing the constitutionality of Section 922(g)(1) since *Bruen*. Two held that the statute is constitutional in all of its applications, and one narrowly held that it was unconstitutional as applied to an individual with a prior felony conviction for a

---

[1] Indeed, even though it is the government's burden under *Bruen* to produce evidence that Section 922(g)(1) is consistent with this nation's history and tradition of firearm regulation, *see Bruen*, 597 U.S. at 33-34, 60, this Court is not confident that it is properly equipped to evaluate competing accounts of history. *See United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2022 WL 16649175 (S.D. Miss. Oct. 27, 2022) ("[W]e are not experts in what white, wealthy, and male property owners thought about firearms regulation in 1791. Yet we are now expected to play historian in the name of constitutional adjudication."). That time-consuming task is particularly burdensome in a criminal case where the court must also balance a defendant's Sixth Amendment right to a speedy trial. U.S. Const. amend. VI.

nonviolent offense. *Compare United States v. Jackson,* 69 F.4th 495, 501-2 (8th Cir. 2023) (explaining that "[h]istory shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people," and that *Bruen* "reaffirmed" that "the right is 'subject to certain reasonable, well-defined restrictions,'"), *and Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (holding that *Bruen* did not abrogate Tenth Circuit precedent upholding the constitutionality of Section 922(g)(1)), *with Range v. Attorney General,* 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (holding that a conviction for food-stamp fraud could not support a ban on the defendant possessing a firearm because that specific application of Section 922(g)(1) had no historical analogue).

Other circuit court cases that Gaskin relies on, for example *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), analyze *different* firearm regulations, such as 18 U.S.C. § 922(g)(3)'s ban on possession of a firearm by any person who is "an unlawful user of or addicted to any controlled substance." The reasoning of many cases that examine those other provisions support, rather than undermine, the constitutionality of Section 922(g)(1). *See, e.g., United States v. Connelly,* No. EP-22-CR-229(2)-KC, 2023 WL 2806324, at *10 (W.D. Tex. Apr. 6, 2023) ("[T]he historical tradition of disarming 'unlawful' individuals appears to mainly involve disarming those convicted of serious crimes after they have been afforded criminal process. Section 922(g)(3), in contrast, disarms those who engage in criminal conduct that would give rise to misdemeanor charges, without affording them the procedural protections enshrined in our criminal justice system."). Mindful that many challenges to Section 922(g)(1) are currently pending on appeal, this Court nonetheless is not convinced that there presently exists any genuine circuit split over the facial constitutionality of felon disarmament under Section 922(g)(1). *United States v. Harrison*, No. 3:22-CR-455, 2023 WL 4670957, at *8 (N.D.N.Y. July

20, 2023) ("[T]he list of post-*Bruen* precedent that is actually favorable to defendant's Second Amendment text-and-history argument basically begins and ends with the *en banc* opinion in *Range*.").

Considering the weight of the precedents discussed thus far, I conclude that Section 922(g)(1) is facially constitutional.

### B. As-Applied Challenge

Gaskin also argues that Section 922(g)(1) is unconstitutional as applied to the circumstances of his case. As discussed previously, it is unclear whether as-applied challenges to Section 922(g)(1) are available to defendants after *Bruen*. *See, e.g., Jackson*, 69 F.4th at 501-02 (8th Cir. 2023) (holding that Section 922(g)(1) is constitutional facially and as applied to nonviolent felons, and concluding that, "[g]iven the[] assurances by the Supreme Court" in *Heller*, *McDonald*, and *Bruen* "and the history that supports them. . . . there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."). Though not cited by Gaskin, the *en banc* Third Circuit's decision in *Range v. Attorney General* would provide the greatest support for the appropriateness of his as-applied challenge. 69 F.4th 96 (3d Cir. 2023) (en banc). In *Range*, the court sustained a post-*Bruen* constitutional challenge to Section 922(g)(1) as applied to an individual with a prior nonviolent felony conviction. *Id.* at 106. But that decision, by its own terms, has limited precedential value for defendants who do not share the unique criminal background of the plaintiff, Bryan Range. *Id.* ("Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a) [for making a false statement on a food stamp application]. . . . the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms.").

Gaskin argues that his "unique background, where and when the underlying felonies occurred" should be considered when determining the constitutionality of Section 922(g)(1) as applied to him, explaining that many of his prior felony convictions occurred when he was a juvenile and while he was incarcerated, serving a sentence for a conviction that has now been overturned. Doc. No. 112, at 12. The government disputes, in large part, Gaskin's characterization of the circumstances of his prior convictions. *See* Doc. No. 116, at 38-39. In any event, Gaskin admits that, for the purposes of this motion, he is a convicted felon. Doc. No. 112, at 1-2. And, he cannot dispute that he has several prior felony convictions for violent offenses. *See* Doc. No. 116, at 38-39 (summarizing Gaskin's criminal history). Therefore, the Third Circuit's decision in *Range* offers no support for Gaskin's as-applied challenge to Section 922(g)(1), because his criminal background bears no similarity to Range's. Gaskin's prior convictions for violent criminal offenses are, in contrast, at the heart of the historically-rooted purpose of regulations like Section 922(g)(1), which is to disarm people who are perceived as dangerous or who have demonstrated disregard for the law. As another district court judge aptly observed when considering the constitutionality of another provision of Section 922(g):

> Frankly, it is sad commentary on this nation's history that courts must compare laws restraining alleged domestic abusers from retaining firearms to those stripping Second Amendment rights from enslaved people, Native Americans, and religious minorities based on their 'dangerous' identity. Yet, at the same time, to understand the principles that animate the Second Amendment, the Supreme Court requires us to look to our grim past to determine the scope of the right to bear arms. Ultimately, laws limiting groups the political community deemed 'dangerous' from possessing firearms are strong evidence that this Nation has a historical tradition of limiting the gun rights of those that may pose a threat in the future.

*United States v. Brown*, No. 2:22-CR00239-JNP-CMR, 2023 WL 4826846, at *11 (D. Utah July 27, 2023).

Therefore, I conclude that Section 922(g)(1) is constitutional as applied to Gaskin.

## IV.     Conclusion

For the reasons set forth above, I hold that Section 922(g)(1) is constitutional, both on its face and as applied to Gaskin. *Bruen* did not disturb and, if anything, endorsed prior Supreme Court dicta regarding the validity of "longstanding prohibitions" of felon firearm possession. The Second Circuit's incorporation of that dicta into precedent upholding the constitutionality of Section 922(g)(1) remains in effect. I am bound by that precedent. Accordingly, Gaskin's motion is denied.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of February 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge