UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIM. NO. 3:22-CR-98 (SRU)** |
| | : | |
| | : | |
| **CHRISTOPHER GASKIN** | : | **JUNE 11, 2024** |

### Mr. GASKIN'S MEMORANDUM IN AID OF SENTENCING

A sentence of time served would be appropriate for Mr. Gaskin. As the guidelines are merely considered advisory the undersigned is requesting that the court sentence Mr. Gaskin to a below guideline sentence. The court should give more consideration to the factors set forth in 18 U.S.C. § 3553. There are also factors relating to Mr. Gaskin set forth in the PSR calculation and the government's position for which the guidelines do not allow proper consideration due to his unique circumstances. The punishment requested and the basis for the punishment are not in proportion to Mr. Gaskin's conviction and actions. In essence, the government wants lengthy incarceration based primarily based upon his behavior after his arrest which has little to no relation to the actual offense. If the war on drugs and the mass incarceration of swaths of communities has shown us anything it is that not only does it not deter crime, proportionately punish the guilty, often punish the innocent it creates a cycle of more crime. This is due to lack or rehabilitation and economically stressed groups of our country left in an even worse situation. This increased economic stress, along with the lack of emotional support repeats the cycle of crime. Somewhere the concept that the criminal justice system, the courts, are in place to

1

protect the innocent seems to have got lost in a desperate gambit to control crime, which is often times conceived as being far worse than it actually is.

Mr. Gaskin experienced the perversion of this system firsthand. See <u>Gaskin v. Comm'r of Corr</u>. 183 Conn. App. 496 (2018). The system failed him on many levels. His lawyer did not even do a direct appeal of his conviction which is absolutely shocking and in State if Connecticut there is a constitutional right to a direct appeal, and he received a 60 year sentence.[1] He had to wait decades even to get a proper appeal. The short of it was the court found the state presented false testimony and failed to correct or notify any parties. He served close to 20 years in prison with the first eight years in solitary confinement at Northern which is essentially a prison within a prison. When sent back for re-prosecution the charges were dismissed. The failure of the justice system has made Mr. Gaskin rightfully mistrustful of the criminal justice system. Long years of unconstitutional confinement caused him great mental and physical damage. One thing Mr. Gaskin did learn was that sitting there and saying nothing got him close to a one-way ticket to life in prison. He isn't going to stand for that again and the court should not hold that against him.

Mr. Gaskin should certainly be bound by the law like any citizen. But due to the trauma caused him by his wrongful incarceration he has extreme trauma, physical disabilities and mental health issues. This is the root of why he slipped back into crime. This includes paranoia which needs treatment. When the police stopped Mr. Gaskin, he was no threat to them. More incarceration will not cure this nor is

---

[1] Based upon the stress, dangers and minimal health care this essentially a life sentence. There is no good time, parole etc., for murder convictions as an inmate serves every day.

warehousing him the solution. With Mr. Gaskin's physical and mental condition, the guideline sentence would likely be a death sentence.

Possession of a gun by a felon is a serious offense. Possessing narcotics is serious. There are no specific victims here, other than the general harm caused to society by crime in itself. To sentence Mr. Gaskin to a 15-year mandatory minimum sentence, which is hypothetical an ACCA is not applicable here, is disproportionate to the extreme. As is a sentence in the range of 188 months (15.6 years) to 235 months (19.5 years). Mr. Gaskin has already served a significant period of incarceration.

Ironically his current years of incarceration has occurred in facilities that are far worse than if had been serving a sentence. He has no physical contact with his family. All his calls and mail are monitored. There are few if any programs of any sort. Medical treatment for pretrial detainees is secondary to sentenced inmates. Due to the constant rotation of fellow inmates his exposure to random violence is increased greatly. The facilities are infested with rats and bedbugs. All of this is justified due to the "short term" nature of pretrial detainees. Mr. Gaskin has been serving hard time taking an incredible toll on him physically and mentally.

I. **SENTENCING FACTORS**

Regarding sentencing the Court must take into consideration the factors of 18 U.S.C. § 3553 in determining the appropriate sentence in this case beyond what is contemplated in the plea agreement. These factors are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
(B) To afford adequate deterrence to criminal conduct;
(C) To promote the public from further crimes of the defendant; and,
(D) To provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

The undersigned requests the court take into consideration Mr. Gaskin's factors as set forth above in light of the statute and not the guidelines.

I. **ISSUES IN THE PSR[2]**

On the stolen gun issue, I included the police report provided to me by the government. Mr. Vazques (Vasquez?) did not report his gun's stolen, or at least he said they were stolen. I pulled out the pertinent section of the Hartford P.D. report:

> Officer Barron retrieved the silver Arcadia Machine & Tool Backup .380 (Serial #G14728) and rendered it safe. The firearm was loaded with (6) six R-P .380 caliber ammunition rounds (five within the magazine and one in the chamber). Officer Barron found the firearm to be fully functional with a slide, trigger, and unobstructed barrel. A check of the NCIC database for the silver Arcadia Machine & Tool Backup .380 (Serial #G14728) returned that the firearm was not listed as stolen. A Connecticut State Police Weapons records check revealed that the firearm was listed as registered to Andres Vasquez Jr. (DOB 4/13/1987) of 631 Water Street Canterbury, CT. Officer Iannace and Officer Hebert contacted Andres Vaszquez who stated the following: Approximately one year prior he had a safe stolen which contained multiple firearms. He was contacted by the Alcohol Tobacco and Firearms Bureau (ATF) after one of his firearms was located in an illegal firearm possession case in Hartford, CT (Case #21-00463). The ATF seized his Connecticut Pistol Permit and listed his firearms as stolen. Note: The listed silver Arcadia Machine & .Tool Backup .380 (Serial #G14728) at the time of this writing is not listed as stolen in the NCIC !database. Upon further information appropriate action will be taken

In CT when one does a transfer of a gun it is statutorily required to fill out a form and provide it to the State and failure to do so is a crime and the loss of gun permit. To not report guns stolen, here actually twice, in Connecticut is a crime. Mr.

---

[2] These have been provided to probation as soon as possible and several are addressed in the addendum.

Vazquez was not charged or convicted for failing to report per the statute as far as the undersigned could locate. But one has to wonder why someone wouldn't report stolen a safe full of guns? A simple answer is that they were not and he illegally transferred those guns.

The undersigned attached a letter setting forth several other issues for the court's consideration relating to the PSR and how the guideline range was reached. The undersigned has also included a letter from his civil attorney Sean Fisher.

## CONCLUSION

Mr. Gaskin has been punished more than is appropriate for his actions. As such the court should impose a fair, just and reasonable sentence. That would be a sentence of time served with supervised release.

Respectfully Submitted

THE DEFENDANT,

/s/ Sebastian O. DeSantis
Sebastian O. DeSantis
157 Church Street, 19th Floor
New Haven, CT 06510
Phone (860) 439-0407
desantislawyer@gmail.com
Fed # CT20116

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on June 11, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          /s/ Sebastian O. DeSantis



# Brenner, Saltzman & Wallman LLP
Attorneys at Law – Established 1963

*Sean M. Fisher*
Email: *sfisner@bswlaw.com*

May 20, 2024

The Honorable Stefan R. Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard, Suite 411
Bridgeport, Connecticut 06604

**Re:** *Christopher Gaskin*

Dear Judge Underhill:

     I am counsel to Christopher N. Gaskin in the matter of Claim No. 25686 before the Office of the Claims Commissioner. I am the Legal Director & Firm Counsel at Brenner, Saltzman & Wallman LLP, and I have been practicing civil litigation for more than 23 years. In my current position, I oversee the day-to-day operations of the firm and serve as counsel to the firm. I write this letter in support of Mr. Gaskin in anticipation of his sentencing on May 22, 2024.

     I first met Mr. Gaskin at the Cheshire Correctional Institution in February of 2015 when I was appointed counsel to Mr. Gaskin by Judge Thompson in a civil rights case alleging deliberate indifference to his medical conditions. Mr. Gaskin was serving a life sentence for murder, and he was the first person serving prison time I had ever represented. I told him as much when I met him for the first time, and he said it was fine with him because he had a good idea of what his case was about. He did indeed. We had several conversations about twists and turns in the case, but Mr. Gaskin never lost focus on what he thought was important. That action settled in May of 2016 immediately before trial with the help of Judge Merriam.

     During that case, he and I spoke about a habeas corpus petition Mr. Gaskin had pending in Superior Court. Mr. Gaskin was optimistic about the petition and hoped to be released. I was a skeptic given the passage of time since his conviction and my limited knowledge gleaned from serving as a law clerk to Judge Squatrito of the habeas corpus process. I sincerely wished Mr. Gaskin well and thought little of it when we parted ways in 2016.


Imagine my surprise when Mr. Gaskin called me in the summer of 2018 to tell me that his convictions for murder and conspiracy to commit murder were overturned thirteen years after the fact. When I read the Appellate Court's decision, I understood why. Mr. Gaskin asked me to represent him in filing a claim for compensation for wrongful incarceration with the Claims Commissioner, and I agreed to do so. I knew that Mr. Gaskin and I could work together, and the process was unfamiliar but straightforward.

I was surprised for the second time when I learned that Mr. Gaskin was suddenly released in March of 2019 after the State abandoned its effort to retry Mr. Gaskin. I had, however, no idea about the difficulties Mr. Gaskin would face upon release. After being in prison since 2000, Mr. Gaskin's possessions fit into a plastic trash bag. He had no family, no place to go, and no idea of what he would be doing. He had no identification, no State benefits, and no resources to find help. We spent hours trying to get his life off the ground. The family of an inmate was kind enough to take him in. Mr. Gaskin received no pre-release services while in prison because the prison did not know when he would be released. The lack of such services greatly hindered Mr. Gaskin's ability to reintegrate.

To make matters worse, the claim for wrongful incarceration was anything but straightforward. The State fought the claim vigorously because Mr. Gaskin was the first claimant under the new version of the statute who was not deemed "innocent" by the State. The State also served me with a lien notice for the costs of incarceration for the entirety of Mr. Gaskin's vacated sentence, which lien is now invalid due to a 2022 amendment of the statute. There were delays at the Claims Commissioner's office to begin with, but the pandemic ground the claim to a screeching halt. When the claim did get back on track, there were other delays. Finally, a hearing on the claim took place in August of 2022, but the Claims Commissioner resigned in January of 2023 before deciding the claim. The new Claims Commissioner decided the claim in October of 2023, but the award was far less than we had hoped for because the Claims Commissioner excluded time Mr. Gaskin served other sentences from the statutory award.

As counsel to Mr. Gaskin in the Claims Commissioner case, I had the opportunity to delve into the hardships he suffered during his life. In fact, it is difficult for me to conceive of a harder life or more formidable odds facing a person. Even though his murder



**Brenner, Saltzman & Wallman** LLP

conviction was vacated, Mr. Gaskin will carry that burden with him for the rest of his life. There is simply no explanation for a twenty-odd year period when he was cut off from society, and Mr. Gaskin will need to explain this to employers, landlords, and anyone else with whom he enters any kind of arrangement, many of whom will not appreciate the significance of a vacated conviction. Mr. Gaskin spent his time in prison in isolation and in a constant state of conflict with the prison staff and the other inmates. Mr. Gaskin also has physical health conditions that require care and attention. Mr. Gaskin also bears the scars of the many traumas he suffered throughout his life. In order to survive, Mr. Gaskin has erected defenses that are virtually impenetrable at this point. I struggle to put the magnitude of Mr. Gaskin's challenges in perspective.

I have spent many hours with Mr. Gaskin over the last five years, and I believe he deserves a chance to live his life. Mr. Gaskin is bright and intelligent. I have seen him smile, laugh, and feel happy. He is thoughtful and considerate towards me. Most of my conversations with him are quiet and contemplative. Mr. Gaskin was never violent or threatening in any way towards me or others in my presence, even when we had difficult conversations. He tried to resolve our conflicts with words and thoughts. There were many times when he changed my viewpoint. Often, I would leave a meeting with him and wonder how a person could endure what he had to endure and still want to try. From my perspective, he seeks to live the rest of his life in peace.

Mr. Gaskin has seen the very worst a person could endure throughout his entire life. He was wrongfully convicted of murder. I believe that, if given a break and provided with help, Mr. Gaskin could find his way to peace. It is my wish that he be given the chance to do so. Thank you for considering my thoughts and words concerning Mr. Gaskin.

                                                        Very truly yours,

                                                        *Sean M. Fisher*

                                                        Sean M. Fisher

**Connecticut, Fed Dist of Connecticut**

**Massachusetts, Fed Dist of Massachusetts**

**1st & 2nd Cir. Court of Appeals**

SEBASTIAN O.
DESANTIS

**Super Lawyer Criminal Defense 22-24**

**National Trial Lawyers Top 100 2013-2024**

**Board Certified Criminal Trial Advocate 06-24**

# DeSANTIS LAW FIRM, LLC

157 Church Street
19th Floor, Suite 1945
New Haven, CT 06510

July 11, 2024

Winter Pasqual
United States Probation
VIA Email

      RE:    PSR OBJECTIONS/CORRECTIONS/Mr. GASKIN INPUT

I know this is late and you are very busy, but I wanted to present a few issues that occurred to myself and Mr. Gaskin and to preserve the record. Unfortunately I was unable to meet with him until this morning. This is based on the final PSR 6/7/24 (#164).

**Par. 18:** The version of the facts surrounding the arrest are stated to be based on "testimony" and other materials. I would note, and I know this is not something you can really be aware of, that the motion to suppress hearing and trial testimony had significant differences between the police report and what was on the body cams and testimony under oath. These almost exclusively deal with issues based upon probable cause or the search.

**Par. 47:** There are several issues:
1. Mr. Gaskins DOB is 12/15/1976 and turned 18 on 12/15/1994. The robbery charged occurred on 2/24/1995, around 2 ½ months after he turned 17 therefore, he was a juvenile;
2. Under Connecticut law this matter, being considered a juvenile offense, should be sealed and or erased pursuant to C.G.S. Sec. 54-76o;
3. C.G.S. Sec. 53a-134 can be committed (i.e. 134(a)(4) in a manner which falls outside the definition under U.S.S.G. Sec. 4B1.2 and no facts are set forth which show how the crime was committed that would be considered crime of violence and/or the government would not be able to meet its burden of proof for ACCA;

**Par 52**: C.G.S. Sec. 53a-134 can be committed (i.e. 134(a)(4) in a manner which falls outside the definition under U.S.S.G. Sec. 4B1.2 and no facts are set forth which show how the crime was committed that would be considered crime of violence and/or the government would not be able to meet its burden of proof for ACCA;

**Par. 53 & 62:** This offense was charged, tried and sentenced along with the murder case in Par. 62 but was not overturned. The jail sentence Mr. Gaskin was sentenced to and partially served was overturned. Therefore the only jail sentence he served was 5 years for witness tampering. The offense date was 9/18/2001. As a non-violent offense Mr. Gaskin would have done at the most was 50% of that sentence. The completion of that date at 50% would have been 3/18/2004. Even if he had served 100% of that sentence, which is extremely unlikely, the release date would be 9/18/2006. 15 years from the date of this offense is 1/1/2007. Although technically incarcerated it was on an illegal sentence based upon a violation of his constitutional right to a fair trial. As such those 3 points should not be part of the calculation for criminal history;

**Par 55:** C.G.S. Sec. 53a-134 can be committed (i.e. 134(a)(4) in a manner which falls outside the definition under U.S.S.G. Sec. 4B1.2 and no facts are set forth which show how the crime was committed that would be considered crime of violence and/or the government would not be able to meet its burden of proof for ACCA; and,

**Par 62**: The charges set forth, with the exception of the witness tampering charges, were dismissed and pursuant to C.G.S. 54-142a are erased and it is improper and violation of Connecticut state law to have these part of the PSR;

I am just trying to make a record and these issues may come up tomorrow. I appreciate your patience and professionalism in this matter.

Regards,

_____/SOD/_____
Sebastian O. DeSantis, Esq

cc. AUSA